PETER HATHAWAY & another *vs.* JACOB THOMAS & others.

The *St.* of 1856, *c.* 50, empowering the mayor and aldermen of any city, and the selectmen of any town, lying upon the tide waters of the Commonwealth, to license any person to construct fish weirs in such waters within its limits, provided such weirs shall cause no obstruction to navigation nor encroach on the rights of others, does not affect the fisheries in Taunton Great River, regulated by *St.* 1855, *c.* 401.

ACTION OF TORT for the conversion of fishing seines and other property connected therewith. The parties submitted the case to the judgment of the court upon the following facts: The plaintiffs had been licensed by the selectmen of the town of Berkley in accordance with the *St.* of 1856, *c.* 50, (the material

parts of which are copied in the margin,*) to construct a fish weir in the waters of Taunton Great River at Grassy Island, which is within the ebb and flow of the tide; and had, under this license, established in the river, at the place specified, a structure composed of two stationary seines and a seine movable at one end. The defendants were fishwardens of the towns of Raynham and Middleborough, and, in their official capacity as such, took and carried away the seines and other property composing the structure so erected by the plaintiffs.

*C. I. Reed*, for the plaintiffs.

*E. H. Bennett*, for the defendants.

CHAPMAN, J. The fisheries of Taunton Great River have evidently been regarded by the legislature as a subject of great public importance; and the *St.* of 1855, *c.* 401, providing for their regulation, contains a system which must have been elaborated with much care and labor. It had in view their preservation as well as their most convenient and profitable use. Under its provisions, the entire fishery was divided into shares; the shares were the property of the several towns designated, so far as they were valuable to sell by auction; and when sold, they became the private property of the purchasers, to be used in conformity with the regulations of the statute during the season for which they were sold.

It is impossible that the *St.* of 1856, *c.* 50, could have been intended to apply to these fisheries; for it contains a limitation that the acts done under it, by the use of fish weirs, shall not

---

\* SECT. 1. The mayor and aldermen of any city, and the selectmen of the several towns, lying upon the tide waters of this commonwealth, are hereby empowered to authorize in writing any person to construct fish weirs in said waters, within the limits of such city or town, for a term not exceeding five years: provided, said weirs shall cause no obstruction to navigation, nor encroach on the rights of others.

SECT. 2. If any person shall wilfully injure or destroy said weirs, or any part thereof, or shall, without leave of the owners thereof, take from the same any fish found therein, he shall, upon conviction, forfeit and pay to the use of the owners of said weirs a sum not exceeding twenty dollars, to be recovered in any court of competent jurisdiction, and shall moreover be liable to the parties injured for all damages in a civil suit.

encroach on the rights of others. But the taking of fish by weirs in Taunton River would of necessity encroach on the rights of proprietors under the prior act. The encroachment might be to such an extent as to destroy the whole value of the rights, and the erection of weirs might be carried so far as greatly to diminish, and perhaps to destroy, the fisheries themselves. If the legislature had intended to destroy the system created in the previous year, they would have repealed the act; if they had intended to modify it, they would not have done it by hostile and conflicting legislation, but by carefully guarded provisions. There is another class of fisheries in respect to which the act is appropriate and useful, and we think it was intended to be applied to them only.

*Judgment for the defendants.*